# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| HAROLD CARPENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 09-1198 AGR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

      Harold Carpenter filed this action on July 1, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on July 23 and July 31, 2009. On December 30, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On August 21, 2002, and August 2, 2004, respectively, Carpenter filed applications for disability insurance benefits and supplemental security income benefits alleging an onset date of May 21, 2001. Administrative Record ("AR") 12, 105-07. The applications were denied initially and upon reconsideration. AR 83-87, 92-97. An Administrative Law Judge ("ALJ") conducted hearings on August 22, 2006, and January 22, 2007, at which Carpenter and a vocational expert testified. AR 1371-1418.

On February 23, 2007, the ALJ issued a partially favorable decision and found that Carpenter was disabled for the closed period of May 21, 2001 through July 14, 2002. AR 39-52. On May 4, 2007, the ALJ amended the decision. AR 29. On June 28, 2007, the ALJ again amended the decision, which superseded the original decision dated February 23, 2007 and the amendment dated May 4, 2007. AR 12-25. The ALJ found Carpenter disabled for the same closed period. On April 20, 2009, the Appeals Council denied Carpenter's request for review. AR 5-7. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ found Carpenter met the insured status requirements as of May 21, 2001, the date he became disabled. AR 16. Carpenter has the following severe impairments: "disorders of the thoracic spine, lumbar spine, left elbow, and pelvis; depression; and anxiety." *Id.*

From May 21, 2001 through July 14, 2002 (the "closed period"), Carpenter "was unable to sustain any type of work, including sedentary work." *Id.* He "was not able to work on a consistent 8-hour per day/40-hour per week basis" "due to [his] pain and inability to concentrate." *Id.* Aside from his pain and inability to concentrate, "[h]e could sit, stand, and/or walk for a total of 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs, but could not climb ladders, ropes, scaffolds, or run or jump. He could frequently bend and balance and occasionally stoop, crouch, kneel, squat, and crawl. He needed to avoid even moderate exposure to vibration, and could not work above ground, at

heights, or around dangerous, moving machinery.  He could not engage in repetitive very heavy lifting, pushing, or pulling." *Id.*

Beginning July 15, 2002, Carpenter "has had the same residual functional capacity as during the closed period, except that [he] is now able to maintain an 8-hour workday and a 40-hour workweek." AR 18.  Although Carpenter cannot perform his past relevant work, he "has been able to perform a significant number of jobs in the national economy," including cashier, furniture rental consultant and mail clerk.  AR 24-25.

Carpenter argues that the ALJ erred in (1) failing to consider the opinion of a treating physician; (2) rejecting Carpenter's testimony; (3) failing to consider properly the opinions of a lay witness; and (4) failing to pose a complete hypothetical to the vocational expert.

### C.   Dr. Uppal's Opinion

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotations omitted).

Carpenter contends that the ALJ failed to consider the opinion of Dr. Uppal, an orthopedic surgeon who treated Carpenter in 2001.  (JS 3-4.)  Dr. Uppal's letter dated October 2, 2001, states that he examined Carpenter on September 5, 2001.  AR 262.  "I do feel, in all medical probability, that he will be on temporary total disability for the next eight to ten weeks." *Id.* "At this point, I do not feel, in all medical probability, that he will be able to go back into the construction field as a construction supervisor.  He will have permanent residuals from this injury.  It is

4

very difficult to comment on exactly what his permanent disability and work restrictions will be." *Id.*

The ALJ found Carpenter disabled during the closed period May 21, 2001 through July 14, 2002, which encompasses Dr. Uppal's period of temporary total disability. AR 16; *see also* AR 17 ("objective medical record and various medical source opinions are consistent in finding that the claimant was unable to work through July 15, 2002"). After the closed period, the ALJ found that Carpenter was unable to return to his past relevant work as a construction worker or construction supervisor, which is also consistent with Dr. Uppal's opinion. AR 24. Dr. Uppal did not speculate as to what Carpenter's work restrictions after the period of temporary total disability would be. Carpenter has not shown any inconsistency between Dr. Uppal's opinion and the ALJ's residual functional capacity assessment. The ALJ did not err.

### D. Carpenter's Testimony

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Carpenter's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 23.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and

what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted).  In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13,[1] quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ determined that Carpenter's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on July 15, 2002."  AR 23.  The ALJ relied on three reasons:[2] (1)

---

[1] Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[2] As the Ninth Circuit has noted, one case suggested that the clear and convincing standard applies unless the ALJ makes a finding of malingering, whereas other cases have held the existence of affirmative evidence suggesting malingering suffices. *Carmickle v. Commissioner*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006));

"[m]ore than one examiner concluded the claimant was a malingerer"; (2) "[t]he objective medical evidence does not fully support the subjective complaints"; and (3) activities of daily living are not indicative of disability. AR 23.

The ALJ's discussion of malingering is supported by substantial evidence. On February 3, 2004, Dr. Bruce Ludmir, a clinical psychologist, conducted a comprehensive psychological re-evaluation of Carpenter. AR 899, 919-923. Carpenter's scores on several tests indicated "deliberate and conscious exaggeration and feigning" and "gross and deliberate magnification and fabrication of symptoms." AR 922-23. Carpenter's scores on the validity scales in the Minnesota Multiphasic Personality Inventory-2 indicated the profile was "completely invalid." AR 922. In addition, while claiming to have extreme symptoms, Carpenter exhibited an easy going demeanor and tendency to smile. AR 919, 925-26. Carpenter did not demonstrate any cognitive or memory deficits that he claimed to have. AR 919-20. Dr. Ludmir diagnosed malingering. AR 923. In addition, the ALJ noted that on March 1, 2004, Dr. Shoji (an orthopedic qualified medical examiner) found that "all fractures had healed without residual disability," diagnosed "a somatization disorder associated with symptom magnification," and found it "evident that [Carpenter] was exploiting the system for financial gain." AR 23, 1289; *see also* AR 936, 1137-38. In May 2005, Dr. Shoji reviewed additional medical records and did not change his opinion. AR 1057-59.

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting [subjective] testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ's finding is supported by substantial evidence. The ALJ's opinion listed inconsistencies between Carpenter's

---

*Schow v. Astrue*, 272 Fed. Appx. 647 (9th Cir. 2007).

allegations and objective medical evidence indicating that Carpenter had normal station and gait, normal strength in the upper and lower extremities, normal sensation, healed fractures without residual disability, and a minor abnormality in an MRI head scan deemed to be of no clinical significance. AR 23-24.

The ALJ also accepted the testimony of "the three Agreed Medical Examiners, who were chosen by the claimant and his adversary in the workers' compensation claim. AR 24. Dr. Chun found Carpenter's "subjective complaints . . . to be greatly in excess of his objective findings." AR 1367. Dr. Chun found that Carpenter "demonstrates a normal evaluation of the neck, upper back, left elbow, and pelvis. There is only subjective tenderness in the thoracolumbar junction . . . . He has full range of motion in the thoracolumbar spine." AR 1366. The radiologic evidence demonstrated Carpenter's "fractures are stable and well healed." *Id.* Another Agreed Medical Examiner, neurologist Dr. Glatstein, found that Carpenter's "neurological examination was unremarkable" and would only restrict Carpenter from "working at unprotected heights" "based on his subjective complaint of fading of vision with rapid head movements." AR 554. Dr. Feldman, a psychiatrist, found that Carpenter's "[p]sychiatric disability is zero to slight." AR 1254.

Carpenter argues that the objective medical evidence shows he was prescribed a cane by Dr. Uppal on September 5, 2001. AR 264-66. However, the ALJ found Carpenter disabled during the closed period May 21, 2001 through July 14, 2002. AR 16. Carpenter cites no evidence of a prescription for a cane after July 14, 2002, and this Court has located none.[3]

The ALJ's finding that Carpenter's "activities of daily living are not indicative of disability" is also supported by substantial evidence. AR 23. An ALJ may properly consider a claimant's daily activities in a credibility analysis. *See Burch*,

---

[3] *See* AR 1137 (Carpenter "started to use a cane, discarded in February 2002").

8

400 F.3d at 680-81. Carpenter "spent 8 to 10 hours a day Monday through Friday with books, audio, and videotapes studying to be a building inspector. He was able to complete the program." AR 24, 1169. He holds a volunteer position as the head of a church committee, which held 30 meetings lasting for hours over the past year. AR 23 (citing AR 1132-33).

The ALJ articulated specific, clear and convincing reasons for discounting Carpenter's credibility and did not err.

### E. Third Party Witness Statements

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

The ALJ did not address the Daily Activities Questionnaire and a Function Report completed by Carpenter's wife. As discussed above, the ALJ gave clear and convincing reasons for rejecting Carpenter's testimony. Given that his wife's testimony was similar (*compare* AR 123-28, 159-67 *with* AR 168-72, 178, 488, 538, 589, 881-83, 944-45, 1131-32, 1284-85, 1377, 1380, 1385), any error was harmless.[4]

### F. Hypothetical Question

Carpenter argues that the ALJ's hypothetical did not include Carpenter's alleged need for a cane. (JS 13-15.) An ALJ may rely on testimony a vocational

---

[4] Moreover, Carpenter's wife's questionnaire in 2004 is not necessarily inconsistent with the ALJ's findings after the closed period. She indicated Carpenter works around the yard and helps with housework. AR 159. He drives a car and does the shopping. AR 162. He is unable to fix the roof, which is consistent with the ALJ's finding that Carpenter cannot return to his past relevant work in construction. AR 160. In terms of functional limitations such as sitting or lifting, she states only generally that he "is unable to do most things for a long time." AR 164.

9

expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  The ALJ is not required to include limitations that are not in his findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  Given that the ALJ properly discounted Carpenter's subjective testimony, the ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  July 12, 2010

ALICIA G. ROSENBERG
United States Magistrate Judge